(Highland County Court of Common Pleas.)

## WILLIAM H. KEYS v. JOHN I. YOUNG.

In this state a married woman may be allowed a homestead exemption out of her un-
divided interest in real estate owned by her and others in co-tenancy.

In such case, the husband, not owning any real estate himself, is not allowed to se-
lect and hold exempt from levy and sale under section 5441, Rev. Stat., personal
property in lieu of a homestead.

(Decided November, 1895.)

NEWBY, J.

It appears from the pleadings and agreed statement of facts in this case, that on the 14th day of February, 1894, the firm of Lefever & Head recovered a judgment against the plaintiff herein, before a justice of the peace, within and for Liberty township, Highland county, Ohio, for the sum of $24.67 and costs. On the 8th day of January, 1895, an execution was issued on said judgment and placed in the hands of the defendant herein, who was then a constable of said township. Said constable on the 19th day of January, 1895, duly levied said execution on eighty-three shocks of corn, the property of plaintiff, and sold said property on the

31st day of January, 1895.   On the 31st day of January, 1895, and before the sale by the constable , the plaintiff, Keys, being a resident of Ohio and a married man living with his wife and family, and not being himself the owner of a homestead, selected the property levied upon in lieu of a homestead, and demanded that the same be set off and allowed to him under and by virtue of section 5441, Rev. Stat., which allows personal property levied upon to be set off in lieu of a homestead when the debtor has no homestead and makes a selection of said property for that purpose.

The constable disregarded this selection and demand, and sold the property to satisfy the writ.   Thereupon the judgment debtor, Keys, brought this action against the constable to recover the value of the property levied upon and sold.   It is claimed on the part of the plaintiff that at the time of the levy and sale, his wife, with whom he was and still is living, was not the owner of a homestead. And this question whether the wife was the owner of a homestead, and the value of the property seized, are the only questions in dispute.

The facts upon which the plaintiff founds his contention that his wife was not the owner of a homestead, are agreed to by the parties.   It is agreed that at the time of the levy and sale, the plaintiff and his wife were living together on a farm of about one hundred and fifty acres, situated in Highland county, Ohio.   That said farm was owned by the plaintiff's wife and her two sisters in common, they having derived their title thereto by devise from their father.   Mrs. Keys owned no other real estate.   The case is submitted to the court without the intervention of a jury.

The question presented upon the foregoing facts, is, was the wife of Keys, at the time of the levy and sale by the constable, the owner of a homestead in the farm occupied by her and her husband, and owned by her and her two sisters in co-tenancy?

If she was the owner of a homestead at that time, her husband would be denied the privilege of claiming any personal property in lieu of a homestead.   Dwinnell v. Edwards, 23 Ohio St. 603.

As the decision of the question turns upon the ownership by the wife of a homestead, the case should be looked at in the same manner as if the execution had been against her, and levied upon her property.

We have then the question of law squarely presented, whether the judgment debtor can demand a homestead in real estate held by him in common with others, under the homestead exemption law of Ohio.

This question has never been passed upon by the Supreme Court of this state, though a very strong dictum appears in the opinion of the court in the case of Hill v. Myers, 46 Oiho St. at page 193.

The decisions of courts of last resort in other states where the question has arisen, are not at all harmonious where the exemption act does not in terms allow the homestead in undivided property. The cases holding different views on the question are cited to sec. 54 of Freeman on Co-tenancy and Partition.

This author, after discussing the reasons advanced for the different conclusions arrived at, endorses the doctrine announced by those courts which hold the homestead exemption allowable in undivided real estate, as having sounder reason to support it.   He says, "But we see no sufficient reason, even in the absence of statutes directly bearing upon the subject, for holding that a general homestead act does not apply to lands held in co-tenancy.   The fact that a homestead claim might savor of such an assumption of an exclusive right as is inconsistent with the rights of the other co-tenant, and that the maintenance of such claim might interfere

with proceedings for partition, form no very satisfactory reason for deny-ing the exemption.

"If the rights of the co-tenant are threatened or endangered, he, alone, should be permitted to call for protection and redress. The law will not sanction any use of the homestead in prejudice of his rights. But as long as his interests are respected, or so nearly respected that he feels no incli-nation to complain, why should some person having no interest in the co-tenancy be allowed to avail himself of the law of co-tenancy for his own, and not for the co-tenant's gain?

"The homestead laws have an object perfectly well understood, and in the promotion of which, courts may well employ the most liberal and hu-mane rules of interpretation. This object is to insure to the unfortunate debtor, and his equally unfortunate and more helpless family, the shelter and the influence of a home. A co-tenant may lawfully employ every par-cel of the lands of the co-tenancy. He may employ them not merely for cultivation or for other means of making profits, but may also build houses and barns, plant shrubs and flowers, and surround himself with all the comforts of a home. His wife and children may, of right, occupy and enjoy the premises with him. Upon the lands of which he is but a part owner, he may and in fact he frequently does, obtain all the advantages of a home. These advantages are none the less worthy of being secured to him and his family in adversity, because the other co-tenants are en-titled to equal advantage in the same home. That he has not the whole, is a very unsatisfactory and a very inhuman reason for depriving him of that which he has." Freeman on Co-tenancey and Partition, sec. 54.

In Vol. 2 of Ballards' Annual of the Law of Real Property, sec. 287, under the heading "As to the right of exemption and who may claim it," an epitome of cases is given, some holding that the right may be allowed in undivided real estate, and others deciding the contrary.

But these cases denying the homestead claim in undivided lands are cited and considered by Freeman, and are opposed by the better consid-ered cases and the weight of authority on the subject. This same author (Freeman) in his work on Executions, refers to this question and re-affirms the statement of the doctrine above stated, and makes the further state-ment that the tendency of the courts is becoming more favorable to the homestead claim in lands held in co-tenancy, and that he is unaware of any well considered case in the last fifteen years disputing the claim. 1 Freeman on Executions (2nd Ed.) sec. 23.

But it seems to me, that bearing in mind the object and purpose of our homestead law, our own Supreme Court has furnished us a rule for the construction of the act which will lead inevitably to the same conclus-ion reached by Mr. Freeman. In the case of Sears v. Hanks, reported in 14 Ohio St., in the opinion by Judge Scott at page 300-301, this language is used: "The humane policy of the homestead act (S. & C. St. 1145) seeks not the protection of the debtor; but its object is to protect his fam-ily from the inhumanity which would deprive its dependent members of a home. Its benefits can only be claimed by heads of families; married persons living together as husband and wife; and widowers or widows hav-ing an unmarried minor child, or children residing with them as part of their family (secs. 1 and 4). And, in aid of this wise and humane policy, the whole act should receive as liberal construction as can be fairly given it. We think its provisions protect the debtor's family, as against his creditors, in the enjoyment of an actual homestead, irrespective of the title or tenure by which it is held." Here is a clear and strong declaration of the policy of the homestead act. It is defined to be a measure having for its foundation the highest considerations of humanity, viz: the se-

curing of a home to the family and its dependent members. And, if humanity requires that a family homestead when owned in severalty, by the husband or wife, shall be secure from the reach of creditors, what good reason can be given, affecting either the creditor or the debtor, why it would not be inhumane to deprive the family of the home when the debtor happens to own only an undivided interest in property occupied as a homestead? In either case to disallow the claim would destroy the home, which it is the design of the statute to protect and preserve.

The policy of the statute and the humanity of its purpose do not depend upon the nature of the interest in the premises, whether in severalty or undivided; but they depend upon the character of the occupancy of the premises.

As I stated in the outset, the question here presented has never reached a decision by the Supreme Court of this state. The only utterance upon the question is a dictum in the case of Hill v. Myers, 46 Ohio St. 193. It appears from the finding of facts in that case that Hill recovered a decree in the District Court of Hamilton county against the defendant, a married woman, subjecting her real estate, consisting of two undivided tenths of a farm, to the payment of her debt. The case was carried to the Supreme Court by Mrs. Myers where the decree of the district court was affirmed. After the affirmance of the judgment of the district court, and before any order of sale was issued on the decree, Mrs. Myers and her co-tenants, without applying to the court and without knowledge or consent of Hill, the judgment creditor, made a voluntary partition of the common property, whereby Mrs. Myers' share was set off in severalty. She thereupon built upon and improved the portion thus set off to her suitable for occupancy as a home, and moved into the house and proceeded to occupy the premises as a family homestead. When the order of sale was subsequently issued, Mrs. Myers claimed a homestead in the property occupied and set off to her. The judgment creditor disputed this claim on the ground that the homestead was acquired fraudulently, in that no homestead could be claimed in the premises so long as they were undivided, and that the division and partition thereof by the co-tenants, without his knowledge or assent, was null and void, and, if permitted to stand, would work a fraud upon his rights. But the Supreme Court, affirming the circuit court, hold that the partition might be made between the co-tenants subject to the right of the judgment creditor to inquire into its fairness. That is, the judgment debtor could not agree to take less than her just and equitable proportion of the common estate, and thus defeat or delay the collection of her debts. The court, therefore, did not feel called upon to decide the question whether the homestead could have been asserted in an undivided interest in the lands.

In the opinion by Judge Dickman, on page 193, it is said, "In view of the voluntary partition had among the co-tenants, the question is not presented to us in an absolute and unqualified form, whether homestead rights can attach to an undivided interest in lands, in the absence of an express provision of the statute to that effect. In this connection, however, we do not hesitate to adopt the views of Mr. Freeman, who is known as a careful and judicious writer." And thereupon is quoted that portion of section 54 of Freeman on Co-tenancy and Partition, which I have quoted above.

This dictum, the preponderance of decisions in other states on the question, and the manifest object and purpose of the homestead act, all force me to the conclusion that the wife of the plaintiff in this case, is the owner of a homestead in the land occupied by her and her husband, and owned by her and her sisters in co-tenancy. But it is argued by

counsel for plaintiff that the homestead exemption is a personal privilege, and may be waived or lost by a failure to demand it at the proper time. And, hence, as Mrs. Keys did not and could not claim a homestead against the execution in this case—the execution not being against her property —the court cannot invest her with a homestead which she can only obtain upon a demand for that purpose. The question is not whether a home-stead should be set off to Mrs. Keys, but whether she is the owner of one. Sec. 5435, Rev. Stat., forbids the setting off of a homestead to either husband cr wife, "if the other has a homestead," showing plainly the intention of the law that no allowance can be made to either the husband or wife of property in lieu of a homestead where the other is in a position to avail himself or herself of the benefit of the homestead exemption.

While it is true that a demand is necessary in order to secure the benefit of the homestead exemption, yet, such a step is not necessary to perfect the ownership of the homestead. A judgment debtor may lose his right to the homestead exemption by a failure to assert his claim therefor. Such failure would in no wise affect his title to, or the existence of, the homestead, but would operate only on his right to have it exempt from levy and sale. Besides, it would be inconsistent for the court to hold in this case, that the plaintiff was entitled to have the property in question set off to him in lieu of a homestead because neither he or his wife owned a homestead, when, if an execution were issued against the plaintiff's wife and levied upon her interest in the undivided realty, the court would be compelled to allow her a homestead in that, thus allowing two homesteads to one family. To permit such a use of the statute as this, would be to convert it into an instrument of fraud, instead of one of protection. The court should decide upon what the parties have a legal right to do, and not indulge in speculation as to what they might or might not do.

This view of the case renders it unnecessary to determine the question of the value of the property sold by the defendant.

Judgment will be entered for the defendant.

D. Q. Morrow and H. D. Davis, or plaintiff.

J. W. Watts and H. A. Pavey, for defendant.